# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TAMARA SUMMERS,<br>    Plaintiff, | :<br>:<br>: |
| v. | :   CIVIL ACTION NO. 18-CV-3652<br>: |
| PA DEPARTMENT OF HUMAN<br>SERVICES, *et al.*,<br>    Defendants. | :<br>:<br>: |

FILED
OCT 04 2018
KATE BARKMAN, Clerk
By_____Dep. Clerk

## MEMORANDUM

**BEETLESTONE, J.**　　　　　　　　　　　　　　　　　　　　　　OCTOBER 4, 2018

On August 27, 2018, *pro se* Plaintiff Tamara Summers filed this civil action pursuant to 42 U.S.C. § 1983 against "PA Department of Human Services (and employees)," the "Community Umbrella Agency (CUA 7) (and employees)," Judge Joseph Fernandes, and Neil Krum, Esq. (ECF No. 2.) She also filed a Motion for Leave to Proceed *In Forma Pauperis* (ECF No. 1) and a Motion for Appointment of Counsel (ECF No. 3).

By Memorandum and Order entered on August 29, 2018, the Court granted Summers leave to proceed *in forma pauperis*, dismissed her Complaint, and denied her Motion for Appointment of Counsel. (ECF Nos. 5, 6.) Specifically, the Court noted that: (1) Summers lacked standing to pursue any claims brought on behalf of other individuals; (2) the Pennsylvania Department of Human Services ("DHS") was entitled to Eleventh Amendment immunity and is not a "person" for purposes of § 1983; (3) Summers had failed to state a claim against CUA7 and any employees of that entity as well as the Department of Human Services; (4) Summers' claims against Judge Fernandes were barred by judicial immunity; and (5) Summers could not maintain a claim against Neil Krum because, as an attorney involved in proceedings regarding Summers'

parental rights, he was not a state actor for purposes of § 1983. (ECF No. 5 at 3-5.) The Court granted Summers leave to file an amended complaint. (*Id.*)

The Court received Summers' Amended Complaint on October 1, 2018. (ECF No. 7.) In the Amended Complaint, Summers seeks to proceed against Judge Fernandes, DHS employees Lakeisha Aikines, Lindsay Garrett, and Rachael Singleton, and CUA employee Antonique Edwards. For the following reasons, the Court will dismiss the Amended Complaint and provide Summers one more opportunity to amend.

I.   **FACTS**

In January of 2013, Summers "and the Muhammad family [were] involved in a landlord-tenant dispute." (Am. Compl. at 4.)[1] According to Summers, the landlord "turned off the water and then called DHS that same day to report that the family was residing in the residence with no water." (*Id.*) DHS investigated that evening, and moved the family into a shelter the next day. (*Id.*) However, "[a] case was opened due to lack of shelter or unsafe shelter and parenting skills." (*Id.*)

In December of 2014, the family moved into permanent housing. (*Id.*) In January of 2015, DHS employee Lakeisha Aikines told Summers "that since objectives had been met the case would be closed but until it was completely closed CUA (Community Umbrella Agency) would supervise the family." (*Id.*) CUA began that supervision in February of 2015. (*Id.*)

In May of 2015, Summers decided to homeschool her older daughter. (*Id.*) At that time, her younger daughter was "not compulsory school age." (*Id.*) In June of 2015, CUA employee Antonique Edwards "filed a petition to bring the case to court." (*Id.*) A hearing was scheduled to take place before Judge Fernandes on July 10, 2015, but it was continued "because the child

---

[1] The Court uses the pagination assigned to the Amended Complaint by the CM/ECF docketing system.

2

advocate, Reginald Allen[,] had left the courthouse." (*Id.*) The hearing was rescheduled for August 31, 2015. (*Id.*) On that date, Summers "appeared and stayed until approximately 3 pm," when she left "because she was told that the children['s] advocate nor her attorney was present." (*Id.* at 5.)

On September 1, 2015, DHS came to Summers' home, "claiming that they needed to do an investigation." (*Id.*) That day, the children were removed from the home "without giving [Summers] a valid reason." (*Id.*) Summers called police, but was told there was nothing they could do. (*Id.*) The next day, Summers received an Order of Protective Custody, "claiming that the reason for removal was because of Mother's ongoing failure to ensure that the children were medically up-to-date." (*Id.*) Summers claims that these allegations were false because the children had had physicals on August 21, 2015. (*Id.*)

A hearing was scheduled to take place on September 3, 2015 before Master William Rice. (*Id.*) Prior to the hearing, there was a conference regarding concerns about the children's intellectual assessment, medical and dental care, housing maintenance, hygiene, and Summers' compliance. (*Id.* at 5-6.) At the hearing, Summers' attorney was not present; instead, "there was another lawyer who [Summers] had never consulted with." (*Id.* at 6.) Rice gave temporary and physical custody of the children to DHS, and a hearing was scheduled before Judge Fernandes for September 10, 2015. (*Id.*)

At the hearing on September 10, 2015, Summers was told that the children could not return to her "because there were allegations of inappropriate touching by [her] live-in-boyfriend Devin Hawkins." (*Id.*) Summers alleges that during the hearing, she also explained to Judge Fernandes that she is Muslim and "believed in [her] children receiving yearly physicals but [not] vaccinations." (*Id.* at 9.) According to Summers, Judge Fernandes "got down off the bench to

3

retrieve a Quran and asked [her] where it said in the Quran that we don't vaccinate my children." (*Id.*)

On September 11, 2015, Summers received a letter from DHS, claiming "to have to do an investigation on the allegations" regarding Devin Hawkins. (*Id.* at 7.) In October of 2015, the allegations "were determined to be Unfounded." (*Id.*) The children were still not returned to Summers. (*Id.*)

In May of 2016, DHS raised allegations that the children's father had sodomized the older daughter in 2009. (*Id.*) An investigation occurred, and those allegations were found to be "Indicated." (*Id.*) The children were not returned to Summers. (*Id.*) Summers alleges that in July of 2016, there "was ex parte communication between DHS and Judge Fernandes" because on July 25, 2016, Antonique Edwards called her and "informed her of a court hearing to take place the next day." (*Id.*)

At the hearing held on July 25, 2016, allegations were raised that Summers had threatened a DHS employee. (*Id.*) Summers states that those allegations were false, but that Judge Fernandes "put a stay away order and gag order" on her. (*Id.*) Summers appealed that order. (*Id.* at 8.) She claims that Judge Fernandes "told untruths in his opinion to Superior Court" because he "stated that a dependency petition had been filed alleging that the children were being sexually abused in [Summers'] home." (*Id.*) On March 8, 2017, Summers filed a motion to recuse, which Judge Fernandes denied. (*Id.* at 10.) On March 21, 2017, Judge Fernandes terminated Summers' parental rights. (*Id.*)

Summers now claims that DHS "deprived her of her constitutional right to raise her children by first filing a fraudulent petition" and by not doing "proper investigations." (*Id.*) She also alleges that CUA employee Antonique Edwards "filed a fraudulent petition to bring the case

4

to court." (*Id.* at 9.) Summers further contends that Judge Fernandes violated her constitutional rights by exercising jurisdiction even though, according to Summers, the children "were never without parental care or control." (*Id.*) She further faults Judge Fernandes for not dismissing the case and for "seiz[ing her] children and put[ting] them under protective custody even though he had no valid reasons to do so." (*Id.*) As relief, Summers asks the Court to reinstate her parental rights. (*Id.* at 11.) She also seeks $1 million . . . or more for emotional pain and suffering." (*Id.*)

## II. STANDARD OF REVIEW

Because the Court previously granted Summers leave to proceed *in forma pauperis*, the Court is required, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), to dismiss the Amended Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "[M]ere conclusory statements do not suffice." *Id.* As Summers is proceeding *pro se*, the Court construes her allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## III. DISCUSSION

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Summers' claims fail for the following reasons.

5

## A. *Rooker-Feldman* Doctrine

As noted above, Summers requests that the Court reinstate her parental rights. (Compl. at 11.) This Court, however, lacks jurisdiction to review and/or vacate the judgment entered by the state court. Pursuant to the *Rooker-Feldman* doctrine, "federal district courts lack jurisdiction over suits that are essentially appeals from state-court judgments." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 165 (3d Cir. 2010). Based on that principle, the *Rooker-Feldman* doctrine deprives a federal district court of jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* at 166 (quotations omitted). Summers is, at least in part, asking this Court to review and vacate an unfavorable judgment entered against her. Accordingly, this Court lacks jurisdiction to review this claim.

## B. Claims Against DHS and CUA

Although Summers has not named DHS and CUA as Defendants in the caption of her Amended Complaint, she raises claims against them in the body. Summers, however, cannot maintain § 1983 claims against DHS because that entity is a department of the City of Philadelphia "and this is not a separate legal entity independently subject to suit." *Biesecker by Biesecker v. Cerebral Palsy Ass'n, Chester Cty. Disabilities Servs.*, No. 17-2586, 2018 WL 3416384, at *6-7 (E.D. Pa. July 13, 2018); *Burton v. City of Philadelphia*, 121 F. Supp. 2d 810, 812 (E.D. Pa. 2000) ("Neither DHS nor YSC has an independent corporate existence from the City of Philadelphia; therefore, all claims against them must be brought in the name of the City.").

6

Even if the Court construed Summers' claims against DHS to be claims against the City, she has not stated a basis for a claim against either the City or CUA. To state a § 1983 claim against a municipality such as the City of Philadelphia or an entity that contracts with a municipality, a plaintiff must allege that the defendant's policies or customs caused the alleged constitutional violation. *See Monell v. Dep't of Soc. Servs of N.Y.*, 436 U.S. 658, 694 (1978); *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003). The plaintiff "must identify [the] custom or policy, and specify what exactly that custom or policy was" to satisfy the pleading standard. *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009). Here, Summers has not identified a policy or custom of either the City or CUA that led to the alleged violation of her constitutional rights, which is fatal to her claims. *See B.S. v. Somerset Cty.*, 704 F.3d 250, 274 (3d Cir. 2013) ("With respect to municipalities such as the County, [the] inquiry turns on whether the due process violation was a result of the County's 'policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy.'").

### C. Claims Against Lakeisha Aikines, Lindsay Garrett, Rachael Singleton, and Antonique Edwards

As noted above, Summers has named as Defendants DHS employees Lakeisha Aikines, Lindsay Garrett, and Rachael Singleton, and CUA employee Antonique Edwards. As an initial matter, Summers fails to mention Garrett and Singleton in the body of the Amended Complaint and therefore has not stated a basis for imposing liability against them. Her only allegation against Aikines is that in January of 2015, Aikines informed her that "since objectives had been met the case would be closed but until it was completely closed CUA . . . would supervise the family." (Compl. at 4.) From this allegation, however, the Court cannot discern how Aikines violated Summers' constitutional rights.

7

Summers alleges that Antonique Edwards violated her rights "fil[ing] a fraudulent petition to bring the case to court." (*Id.* at 9.) The Court must dismiss this claim because "child welfare workers are entitled to absolute immunity for their actions on behalf of the state in preparing for, initiating, and prosecuting dependency proceedings." *Hughes v. Long*, 242 F.3d 121, 125 (3d Cir. 2001) (citing *Ernst v. Child & Youth Servs. of Chester Cty.*, 108 F.3d 486 (3d Cir. 1997)). That immunity is "broad enough to include the formulation and presentation of recommendations to the court in the course of the proceedings." *Id.*; *see also B.S. v. Somerset Cty.*, 704 F.3d 250, 266 (3d Cir. 2013) (concluding that immunity applied where "Eller, on behalf of the County and under Barth's supervision, recommended that the court issue an order depriving Mother of custody of Daughter"). In other words, Summers may not pursue claims against Edwards (or any other DHS and CUA employees) based on her initiation and prosecution of the petition in state court.

### D. Claims Against Judge Fernandes

Summers again brings suit against Judge Fernades based on upon actions taken during the proceedings leading to the termination of her parental rights. Judges are entitled to absolute immunity from civil rights claims that are based on acts or omissions taken in their judicial capacity, so long as they do not act in the complete absence of all jurisdiction. *See Stump v. Sparkman*, 435 U.S. 349, 355-56 (1978); *Weldon v. Cywinski*, 222 F. App'x 205, 207 (3d Cir. 2007) (per curiam); *Azubuko v. Royal*, 443 F.3d 302, 303-04 (3d Cir. 2006) (per curiam). Here, it is apparent that Summers is suing Judge Fernandes based on the manner in which he ruled in or handled the proceedings regarding her parental rights and her children. Accordingly, her § 1983 claims against Judge Fernandes are barred by judicial immunity.

## IV. CONCLUSION

For the foregoing reasons, the Court will dismiss Summers' Amended Complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). In light of Summers' *pro se* status, the Court will provide her one more opportunity to amend. However, any second amended complaint should not raise claims challenging the state court's judgment or raise claims that are barred by immunity, as discussed above. An appropriate Order follows.

BY THE COURT:

_____
**WENDY BEETLESTONE, J.**